**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

|  |  |
|---|---|
| KATHLEEN RAAF, on behalf of herself and all others similarly situated,<br><br>         Plaintiff,<br><br>    v.<br><br>MIGHTYCAUSE CORPORATION,<br><br>         Defendant. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**TRIAL BY JURY DEMANDED AS TO ALL TRIABLE COURTS** |

Plaintiff, individually and on behalf of all others similarly situated, alleges against Defendant Mightycause Corporation ("Mightycause" or "Defendant") as follows:

**NATURE OF THE ACTION**

1. Americans are a generous people, giving billions each year to charitable causes they support. In recent years, for-profit software companies like Mightycause have identified a business opportunity in all this generosity: acting as a middleman between donors and charitable organizations—but furtively charging excessive and undisclosed fees on charitable donations.

2. The opportunity to collect small add-on fees from every small donation charity gets to be massively profitable.

3. While Plaintiff and other reasonable consumers are generous, they have no interest in or intention of enriching a private company like Mightycause as part of their charitable donations. But, unwittingly, and because of Mightycause's website design tricks and other deceptions, that is exactly what occurs.

1

4.      This action is brought to protect donors who give money in good faith to support causes about which they care deeply, only to have additional funds diverted to Mightycause through a deceptive website interface design in which Mightycause automatically adds ambiguous fees ("Fees") to donations without affirmative consumer assent.

5.      Indeed, each time a customer makes an online donation through its website, Mightycause applies negative options, automatically adding on supposedly optional fees to charitable donations and thus jacking up the cost of each charitable contribution. Non-conspicuous negative options are *per se* deceptive according to the Federal Trade Commission.

6.      Mightycause's negative options are deceptive, as they are designed to be hard for consumers to find and remove.

7.      Moreover, Mightycause's add-on fees are deceptively misdescribed and their disclosure is delayed until very late in the checkout process for charitable donations.

8.      In sum, Mightycause employs dark patterns—including preselected, automatically added Fee amounts, misleading interface design, and deceptively named and described add-on fees—to extract additional money from donors who believe they are donating only to the intended charitable recipient.

9.      Charitable donations are uniquely personal and trust-based transactions. Donors act quickly, often emotionally, and with the reasonable expectation that their money will go where they intend—toward helping others, not toward undisclosed or preselected middleman fees like those charged by Mightycause.

2

10.     As a result of Mightycause's practices, Plaintiff and Class members paid money they did not knowingly authorize, conferring an improper financial benefit on Mightycause.

11.     This case seeks to restore donor choice, ensure honesty and a free and fair market for charitable transactions, and to prevent platforms like Mightycause from quietly profiting from Americans' generosity through design practices that foist additional costs on consumers.

12.     Plaintiff seeks restitution, injunctive relief, and all other available remedies to stop Mightycause's deceptive conduct and return ill-gotten gains.

## PARTIES

13.     Plaintiff is a resident and citizen of Westminster Colorado, who has made charitable donations on websites that offer Defendant's widget.

14.     Defendant is a Virginia corporation with its principal place of business in Alexandria, Virginia. Defendant operates an online fundraising and donation platform used nationwide. Defendant's platform processes donations and derives revenue from Fees added to those donations.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of Colorado; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

16.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

I.       **Mightycause's Business Model**

17.      Mightycause advertises to charities that it offers "everything [they] need to grow, with zero subscription costs." https://www.mightycause.com/.

18.      Charities who choose to sign up with Mightycause are provided website integration features, whereby any consumer hoping to make an online donation to a charity is directed to a Mightycause widget to do so.

19.      For example, Mightycause's Donation Form is a widget that charitable organizations can implement directly on the organization's own website:



20.      Mightycause also offers to nonprofit organizations fundraising pages, fundraising event payment processing, and donor management software.

4

21.    However, consumers who attempt to make a charitable donations online with a charity that uses Mightycause's services are provided no notice that, when they do so, they are actually being directed to a widget or website controlled or designed by a third party—namely, Mightycause.

22.    Mightycause tells nonprofits that, "We only succeed when you do. Mightycause earns a small, transparent processing fee only when you receive donations - no donations, no fees." https://www.mightycause.com/nonprofits.

23.    But this is false. The experience is not transparent as Mightycause claims. Instead, donors are never given any reasonable choice whether to pay the Fees or not, as described herein, rendering the Fees not actually "optional."

## II.    Mightycause's Deceptive Screen Flow Features  Negative Options

24.    Once directed to a Mightycause designed and controlled widget or website, consumers attempting to make a charitable donation are immediately exposed to a series of dark patterns, deceptive design features, and outright misrepresentations—all designed to extract extra money out of unwitting donors.

25.    During the donation checkout process, Mightycause automatically selects or adds a Fee to each donation.

26.    As shown below, the automatically added Fee is designed to be easy for donors to overlook, and Mightycause then forces consumers to hunt around for a way to remove the fee—then obscures the method for removing such a fee.

27.    At no point does Mightycause require donors to affirmatively opt in to the "Fee" or through an unchecked box or the ability to provide express consent. It instead

foists these fees on consumers without giving them the ability to provide affirmative assent.

28.    By automatically adding these Fees, then forcing consumers to hunt around for obscure ways to remove them, Mightycause ensures that donors are deceived into believing these additional charges are mandatory—or even part of the donation itself.

29.    On information and belief, Mightycause designs the interface presented by charities to donors regarding the Fees, including the description of the Fees, the time at which the Fees are first mentioned during the checkout process, the time at which the Fee amounts are added to the price total, and the pre-selection of the checkbox or toggle button presented during the online checkout process. On information and belief, Mightycause also uses sales tactics that pressure charities into pre-selecting checkboxes or toggles at checkout that automatically add Fees by default.

30.    Upon information and belief, Mightycause is aware that, by programming its widget to automatically opt in donors to its Fees, most donors will unknowingly pay these fees. Mightycause does this for a simple reason: it knows that if its widgets were programmed to offer truly *optional* fees (requiring an opt-in from donors), the donors would not choose to pay these fees and enrich a private, for-profit company.

31.    Here is how Mightycause's deception works, taking an example from online donations made to charitable organization "Mother Cabrini Shrine Inc." through Colorado Gives Foundation, to which Plaintiff has donated. (Colorado Gives Foundation is a statewide platform for charitable giving).

32.     When a donor initiates an online donation through the Colorado Gives Foundation they are asked to select a donation amount which excludes the fees Mightycause will eventually add later in the checkout process:



33.     After selecting the donation amount and pressing "Continue to checkout", in tiny font above the rest of the checkout page, the checkout screen automatically adds a so-called Fee to all donations which states "Cover fees so my causes receive my full donation":



8

34.	In the example above, Mightycause's deceptive online tricks magically turn a $20 intended donation to a $25.99 donation one screen later, without any affirmative action by a consumer.



35.	In truth, the Fee is optional, but Mightycause never once informs consumers of this fact.

36.	Consumers would have to hunt out and discover a way to remove the Fee—something Mightycause also intentionally makes difficult. Consumers would need to discover that the automatically populated check next to the tiny statement "Cover fees so my causes receive my full donation" could be removed. But it is intentionally designed to go unnoticed.

37.	Even if it were noticed by consumers, Mightycause further adds to the deception by stating "Cover fees so my causes receive my full donation." This is false and misleading because the add-on Fee is far in excess of any negligible processing costs Mightycause has for processing a small donation, and the add-on Fee is in fact far in

excess of the processing costs Mightycause actually charges to the charity. In other words, the Fee for Mightycause is almost pure profit entirely untethered to Colorado Gives Foundation's ability to receive donation amounts.

38.     In sum, having automatically opted consumers into the supposedly optional Fee, Mightycause then proceeds to obscure the fact that the fee is optional—nowhere providing on the checkout screen a disclosure that the fee is optional or an indication that the fee can be removed, then lies about the purpose of the Fee.

39.     Why go to all this trouble to add a processing fee on donations, rather than just asking donors to cover purported processing costs? Clearly, this process is designed to ensure consumers pay a fee they would not otherwise pay—and to ensure consumers do not and cannot remove the processing fee.

## III.     <u>Negative Options are Per Se Deceptive</u>

40.     Defendant's Fees are precisely the type of "Junk Fees" that have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, <u>The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition</u>, Mar. 5, 2024, available at <u>https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/</u> (footnotes omitted).

41.    As the FTC said recently in its effort to combat Junk Fees:

Many consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

42.    In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy—for example, before the consumer "add[s] to shopping cart." Fed. Trade Comm'n, *.com Disclosures: How to Make Effective Disclosures in Digital Advertising* at ii, 14, Mar. 2013, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

43.    As the FTC notes, "[f]or years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." Fed. Trade Comm'n, *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers,* Sept. 15, 2022,

10

available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers.

44.     The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."**

https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 n.46 (emphasis added). Similarly, an item automatically added to the cart, without having done anything whatsoever to add that item, does not constitute affirmative consent.

45.     At bottom, negative options are part of an "unfortunate trend in Internet scams" "which trick consumers into buying things they did not intend to buy." Consumer Protection and the Law, November 2024 Update, Dee Pridgen and Jolina C. Cuaresma § 13:14.

## IV.    Mightycause's Fees are Misnamed, Misdescribed Junk Fees

46.     Mightycause deceptively characterizes the Fee, as described above, and obscures the fact that consumers need to opt out of them to avoid them.

47.     Mightycause delays any mention of the fees until after consumers have selected their donation amount.

48.     The Fees are pure profit for Mightycause and not at all related to the actual costs of processing charitable donation payments.

49.     On information and belief, the cost for payment processing is well below the amounts passed through to donors as processing fees, and Mightycause illegally pockets the difference as profit.

50.    As for debit card payments, the fees that a servicer must pay to process debit card transactions average about $0.34 per transaction, according to the Federal Reserve. *See* Federal Reserve, *Average Debit Card Interchange Fee by Payment Card Network*,    https://www.federalreserve.gov/paymentsystems/regii-average-interchange-fee.htm (last accessed Feb. 19, 2026).

51.    As described herein, donors, charitable as they might be, never intended to give third-party payment processors like Mightycause a donation. Donors are never meaningfully informed that any money they are giving as a part of their charitable transaction actually goes to Mightycause.

52.    Donors presented with Mightycause's widget are not engaging in arms-length commercial transactions. They are attempting to help friends, schools, religious organizations, families in crisis, medical emergencies, and charitable organizations.

53.    Donations are often made under time pressure, emotional stress, or a sense of urgency such as responding to a personal story, emergency, auction event, or community appeal.

54.    In this context, donors reasonably rely on Mightycause to present charges clearly and honestly, and to require explicit consent before diverting any portion of their donation away from the intended cause.

55.    Mightycause's conduct also violates the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401–05 ("ROSCA"). Specifically, Mightycause used "negative option" sales "[that] took advantage of consumers' expectations." *Id*. § 8401(8). Moreover, Mightycause violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the

transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id*. §§ 8403(1), (2).

**V.      Plaintiff's Experience**

56.     On December 8, 2025, Plaintiff donated $10.00 to Mother Cabrini Shrine Inc., through the website operated by Colorado Gives Foundation.

57.     However, due to Defendant's widget, Plaintiff's purchase also included a $0.39 Fee charged by Mightycause that was automatically and surreptitiously added to her cart without her affirmative consent.

58.     Plaintiff did not know the Fee existed or that it could have been removed at the time of her purchase.

59.     Plaintiff would not have chosen to pay Mightycause's Fee if she had known it was optional.

**CLASS ACTION ALLEGATIONS**

60.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies all applicable numerosity, commonality, typicality, fairness, efficiency, and adequacy requirements of the Federal Rules of Civil Procedure. The proposed Classes are defined as:

> All persons nationwide who, within the applicable statute of limitations, paid Mightycause a preselected Fee.

61.     Plaintiff also brings these claims on behalf of a Colorado subclass.

62.     Excluded from the Classes are Mightycause, its parents, subsidiaries,

13

affiliates, officers and directors, any entity in which Mightycause has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

63.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add subclasses, if necessary, before this Court determines whether class certification is appropriate.

64.    The members of the Classes are so numerous that joinder is impractical. The Classes consist of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Mightycause's records.

65.    The claims of Plaintiff are typical of the claims of the Classes she seeks to represent in that Plaintiff, like all members of the Classes, was charged improper and deceptive fees as alleged herein and was damaged by Mightycause's misconduct. Furthermore, the factual basis of Mightycause's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. Mightycause has no unique defenses that would apply to Plaintiff and not the Classes.

66.    There are numerous questions of law and fact common to the Classes that predominate over any questions affecting only individual members of the Classes. Those questions include, but are not limited to, the following:

a.    Whether Mightycause engaged in conduct that prevented or hindered the performance of the contract between charitable organizations and the Classes;

b.   Whether Mightycause's conduct misled or had the tendency to mislead consumers;

c.   Whether Mightycause engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d.   Whether Mightycause's conduct constitutes violations of the laws asserted;

e.   Whether Plaintiff and members of the Classes were harmed by Mightycause's misrepresentations;

f.   Whether Mightycause was unjustly enriched;

g.   Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

h.   Whether an injunction is necessary to prevent Mightycause from continuing to engage in the wrongful conduct described herein.

67.   Plaintiff's claims are typical of the claims of other members of the Classes, in that they arise out of the same wrongful fee policies and practices. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Classes.

68.   Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions involving the imposition of junk fees. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

69.   Plaintiff is not aware of any litigation already commenced by members of the Classes against Mightycause involving the same issues.

70.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual member of the Classes' claims is small relative to the complexity of the litigation, and due to the financial resources of Mightycause, no member of the Classes could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses and Mightycause's misconduct will proceed without remedy.

71.    Even if members of the Classes themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

72.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

73.    Mightycause has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Classes as a whole.

74.    All conditions precedent to bringing this action have been satisfied and/or waived.

16

## COUNT I
## VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
### (On Behalf of Plaintiff and the Colorado Subclasses)

75.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

76.     Plaintiff and other members of the Classes are consumers within the meaning of the Colorado Consumer Protection Act ("CCPA").  Defendant is a seller within the meaning of the CCPA.

77.     Defendant's conduct, as described herein, constitutes an unfair and deceptive trade practice, as defined in Colo. Rev. Stat. § 6-1-105. Specifically, as described herein, Mightycause (1) automatically and surreptitiously added Fees to consumers' carts without affirmative consent; and (2) misrepresented the purpose of those Fees as required to ensure all money goes to the charity of choice when in actuality, the charity pays no fees for Mightycause's services.

78.     Mightycause's conduct as described herein is also fraudulent and deceptive under the CCPA insofar as Mightycause violates ROSCA by using "negative option" sales "[that] took advantage of consumers' expectations" and by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. 15 U.S.C. §§ 8401(8), 8403(1), (2).

79.     Defendant's conduct amounted to a bait & switch.

17

80.    Defendant's unfair and deceptive conduct occurred, and continues to occur, in the course of Defendant's business.

81.    Defendant's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

82.    Plaintiff relied on Defendant's misrepresentations as discussed above.

83.    Had Plaintiff known the truth, she would not have paid the Fees.

84.    Plaintiff seeks judicial orders of an equitable nature against Defendant including, but not limited to, orders declaring such practices as are complained of herein to be unlawful, unfair, fraudulent and/or deceptive and enjoining Defendant from undertaking any further unfair, unlawful, fraudulent and/or deceptive acts or omissions.

85.    Defendant's practices have injured Plaintiff. Plaintiff therefore seeks damages, statutory damages, and attorneys' fees to the full extent allowed by law.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT
### (On Behalf of Plaintiff and the Classes)

86.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

87.    Plaintiff and the Class have contracted with charities for the purpose of donating funds to those charities.

88.    Mightycause had knowledge of the contractual relationship or prospective contractual relationship between charitable causes like Ann's Heart and Class members like Plaintiff.

89.    Mightycause engaged in conduct that prevented or hindered the performance of the contracts between charities and the Class by (1) automatically and surreptitiously adding Fees to consumers' carts without affirmative consent; and (2)

misrepresenting the purpose of Mightycause's Fees as required to make sure all money goes to the charity of choice when in actuality, the charity pays no fee for Mightycause's services.

90.     Given the deceptive, unfair, and otherwise unlawful nature of Mightycause's actions, Mightycause lacked justification for its conduct.

91.     Mightycause intended to prevent or hinder performance of the contracts between charities and the Classes, including Plaintiff's contract. As a result, Plaintiff and the Class were injured.

92.     Mightycause's conduct as described herein substantially caused the harm inflicted on Plaintiff and the Class and was a significant factor in the breach of the contracts between Plaintiff and the Class and the respective charities with which they contracted.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Classes)**

93.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

94.     By means of Defendant's wrongful conduct as alleged herein, Defendant knowingly assessed Fees upon Plaintiff and members of the Classes that are unfair, unconscionable, and oppressive.

95.     Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Classes. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Classes.

96. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Classes.

97. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

98. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to retain the benefits it received, and is still receiving, without justification, from the imposition of Fees on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

99. The financial benefits derived by Defendant rightfully belong to Plaintiff and the Classes. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds collected by Defendant. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendant traceable to Plaintiff and the members of the Classes.

100. Plaintiff and the Classes have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

1. Declaring Mightycause's policies and practices as described herein to be wrongful, unfair, and unconscionable;

2. Restitution of all amounts paid to Mightycause by Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

20

3.    Disgorgement of the ill-gotten gains derived by Mightycause from its misconduct;

4.    Actual damages in an amount according to proof;

5.    Treble damages pursuant to applicable law and in an amount according to proof;

6.    Punitive and exemplary damages;

7.    Pre-judgment interest at the maximum rate permitted by applicable law;

8.    Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

9.    Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Date: May 6, 2026                                      Respectfully submitted,

**KALIELGOLD PLLC**

*/s/ Amanda J. Rosenberg*
Amanda J. Rosenberg (CA Bar No. 278507)
Sophia G. Gold (CA Bar No. 307971)
490 43rd Street, No. 122
Oakland, California 94609
*arosenberg@kalielgold.com*
*sgold@kalielgold.com*

Jeffrey D. Kaliel (D.C. Bar No. 983578)
1100 15th Street NW, 4th Floor
Washington, DC 20005
Telephone: (202) 350-4783
*jkaliel@kalielpllc.com*

*Attorneys for Plaintiff and the Proposed Classes*

21